BUCHALTER, a Professional Corporation
PETER W. MCGAW (SBN: 104691)
VALERIE BANTNER PEO (SBN: 260430)
425 Market St., Suite 2900
San Francisco, CA 94105-3493
Telephone: (415) 227-3533
Email: pmcgaw@buchalter.com
        vbantnerpeo@buchalter.com

BUCHALTER, a Professional Corporation
ANTHONY J. NAPOLITANO (SBN: 227691)
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017-1730
Telephone: (213)891-0700
Email:  anapolitano@buchalter.com

Attorneys for Plaintiff
AUTOZONE, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTOZONE, INC., a Nevada corporation,<br><br>          Plaintiff,<br><br>      vs.<br><br>KINGSWOOD CAPITAL MANAGEMENT, LLC, a Delaware limited liability company; KINGSWOOD CAPITAL MANAGEMENT, L.P., a Delaware limited partnership; AXLE HOLDING COMPANY, LLC, a Delaware limited liability company; AUTOANYTHING, INC. fka AXLE ACQUISITION INC. a Delaware corporation; ALEXANDER MATTSON WOLF, an individual; MICHAEL NIEGSCH, an individual; and ANDREW SANOCKI, an individual,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **FRAUDULENT TRANSFER – ACTUAL INTENT (CAL. CIV. CODE § 3439.04(a)(1) and COMMON LAW);**<br>2. **CONSPIRACY TO FRAUDULENTLY TRANSFER;**<br>3. **FRAUDULENT TRANSFER - CONSTRUCTIVE (CAL. CIV. CODE § 3439.04(a)(2) and COMMON LAW);**<br>4. **FRAUDULENT TRANSFER - CONSTRUCTIVE (CAL. CIV. CODE § 3439.05 and COMMON LAW);**<br>5. **UNLAWFUL DIVIDEND (8 DEL. CODE. §§ 170, 173 & 174 or alternatively CAL. CORP. CODE. §§ 500, 501 & 506);**<br>6. **BREACH OF DUTY OF LOYALTY (SELF-DEALING)**<br>7. **INTENTIONAL INTERFERENCE WITH CONTRACT;**<br>8. **NEGLIGENT INTERFERENCE WITH CONTRACT; and**<br>9. **BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff AUTOZONE, INC. ("Plaintiff") alleges as follows:

**NATURE OF THE ACTION**

1.      This action arises out of the sale by Plaintiff of its subsidiary, AutoAnything, Inc., an online retailer of specialty auto parts, to a private equity firm, Kingswood Capital Management, LLC. Kingswood formed a special purpose entity to acquire AutoAnything and to give Plaintiff two notes totaling $11.5 million, together with other consideration, as the purchase price. The notes in favor of Plaintiff were never fully paid.  Instead, after defaulting on the notes and incurring large trade liabilities that far exceeded its assets, AutoAnything's cash was distributed to Kingswood, its affiliates and its owners in the form of purported management fees and equity distributions.  Ultimately, AutoAnything made an Assignment for the Benefit of Creditors and its assets were sold for a fraction of what Kingswood had agreed to pay the Plaintiff. Creditors will not be made whole.  This action seeks to recover the unlawful transfers authorized by Kingswood and the officers and directors of AutoAnything, and the damages caused thereby, including the failure to perform the obligations to Plaintiff.

**THE PARTIES**

2.      Plaintiff is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of Nevada, with its principal place of business in Shelby County, Tennessee.

3.      Plaintiff is informed and believes, and thereon alleges that, at all times mentioned herein, Defendant KINGSWOOD CAPITAL MANAGEMENT, LLC ("Kingswood LLC") was and now is a Delaware limited liability company that did and now does business in California as a private equity firm.

4.      Plaintiff is informed and believes, and thereon alleges that, at all times mentioned herein, Defendant KINGSWOOD CAPITAL MANAGEMENT, L.P. ("Kingswood L.P.") was and now is a Delaware limited partnership that did and now does business in California as a registered investment adviser.

BUCHALTER
A Professional Corporation
San Francisco

BN 77671286v2

5.     Plaintiff is informed and believes, and thereon alleges that, at all times mentioned herein, Defendant AXLE HOLDING COMPANY, LLC ("Axle Holding") was and now is a Delaware limited liability company. Plaintiff is informed and believes, and thereon alleges that Axle Holding is a wholly-owned subsidiary, directly or indirectly, of Kingswood LLC or Kingswood L.P.

6.     Plaintiff is informed and believes, and thereon alleges that, at all times mentioned herein, Defendant AUTOANYTHING, INC., formerly known as Axle Acquisition Inc., was and now is a Delaware corporation.  Plaintiff is informed and believes, and thereon alleges that AutoAnything, Inc. is a wholly-owned subsidiary of Axle Holding.

7.     Plaintiff is informed and believes, and thereon alleges that, at all times mentioned herein, Defendant ALEXANDER MATTSON WOLF ("Wolf") is an individual and resident of Los Angeles County, California. Further, Plaintiff is informed and believes, and thereon alleges that, from 2003 to present or thereabout, Wolf was and now is Managing Member, founder and principal of Kingswood LLC, and was and now is Managing Partner of Kingswood L.P., and is or was President of Axle Acquisition, Inc. (now known as Auto Anything, Inc.)

8.     Plaintiff is informed and believes, and thereon alleges that, at all times mentioned herein, Defendant MICHAEL NIEGSCH ("Niegsch") is an individual and resident of Los Angeles County, California.  Further, Niegsch was and now is a Partner of Kingswood L.P. from November 2017 to present or thereabout and was a member of the Board of Directors of AutoAnything, Inc. from February 2018 to November 2021 or thereabout.

9.     Plaintiff is informed and believes, and thereon alleges that, at all times mentioned herein, Defendant ANDREW SANOCKI ("Sanocki") is a resident of San Diego County, California.  Further, Sanocki was Vice President of Kingswood L.P., and Chief Executive Officer and Executive Chair of the Board of Directors of AutoAnything from July 2018 to December 2021 or thereabout. Plaintiff is further

1    informed and believes that Sanocki does business in Los Angeles County, California.

2        10.    Each Defendant named in preceding paragraphs was at the time of the

3    act herein complained of, a director or officer, managing member, managing partner

4    or shareholder of Kingswood LLC, Kingswood L.P., Axle Holding or AutoAnything.

5        11.    Plaintiff is informed and believes, and on that basis alleges that each and

6    every Defendant was the agent and/or in joint venture with each and every other

7    Defendant sued herein. Plaintiff further alleges that each act or omission alleged on

8    the part of each Defendant was conducted in the course, scope and furtherance of the

9    agency and/or joint venture and each Defendant bears liability, jointly and severally,

10   singularly and collectively, accordingly as a result of the wrongful acts alleged

11   herein.

12                        **JURISDICTION AND VENUE**

13       12.    This Court has subject-matter jurisdiction over this action under

14   28 U.S.C. § 1332 because Plaintiff, which is located in Shelby County, Tennessee

15   and organized under the laws of the state of Nevada, is of diverse citizenship from

16   each and every Defendant named herein, and because the amount in controversy,

17   exclusive of interest and costs, exceeds $75,000.

18       13.    Venue is proper under 28 U.S.C. § 1391(b) because each and every

19   Defendant named herein resides in Los Angeles County or does business in Los

20   Angeles County.

21                        **GENERAL ALLEGATIONS**

22       14.    Plaintiff is the leading retailer and distributor of automotive replacement

23   parts and accessories in the Americas.

24       15.    Prior to February 26, 2018, AutoAnything, Inc., a Nevada corporation

25   ("Former AutoAnything") was a wholly owned subsidiary of Plaintiff.  Former

26   AutoAnything was an online retailer and distributor of specialized automotive parts

27   and accessories that did business throughout the United States and its Territories.

28       16.    Prior to February 26, 2018, Plaintiff entered into negotiations with Wolf

and Niegsch on behalf of Kingswood LLC for the purchase and sale of Former AutoAnything.

17.    On or about February 26, 2018, Plaintiff and Former AutoAnything entered into an Asset Purchase Agreement ("AutoAnything APA") with Axle Acquisition, Inc. a Delaware corporation ("Axle Acquisition"), pursuant to which Axle Acquisition acquired substantially all of the assets of Former AutoAnything in exchange for an aggregate purchase price of $17,500,000.00 ("Purchase Price"). Wolf signed the AutoAnything APA as President of Axle Acquisition.

18.    The Purchase Price to be paid to Plaintiff consisted of (i) $6,000,000.00 in cash, subject to certain adjustments, (ii) a $1,500,000.00 note made by Axle Acquisition with a maturity date of February 26, 2018 (the "Short-Term Note") and (iii) a $10,000,000 note made by Axle Acquisition with a maturity date of February 26, 2023 (the "Long-Term Note" and, together with the Short-Term Note, the "Notes").  True and correct copies of the Short-Term Note and the Long-Term Note are attached hereto and incorporated herein by this reference as **Exhibit A** and **Exhibit B**, respectively.

19.    Plaintiff is informed and believes, and thereon alleges that, on or about February 22, 2018, one or more of the Defendants formed Axle Holding.

20.    Plaintiff is informed and believes, and thereon alleges that on or about February 26, 2018 one or more of the Defendants formed Axle Acquisition as a wholly-owned subsidiary of Axle Holding.

21.    Plaintiff is informed and believes, and thereon alleges that after February 26, 2018, Axle Acquisition changed its name to Defendant AutoAnything, Inc. ("AutoAnything").

22.    Plaintiff is informed and believes, and thereon alleges that that one or more of the Defendants formed Axle Holding solely for the purpose of entering into the AutoAnything APA, that Axle Holding has no business purpose apart from its ownership of AutoAnything and that AutoAnything is in fact a mere instrumentality

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

or alter ego of Axle Holding.

23.     Plaintiff is informed and believes, and thereon alleges that Axle Holding and AutoAnything operate as a single economic entity, and that the financials of Axle Holding and AutoAnything are comingled, substantively consolidated and essentially identical.

24.     Plaintiff is informed and believes, and on that basis alleges, that between February 26, 2018 and November 2, 2021 Axle Holding and Kingswood LLC entered into what purported to be a "Management Services Agreement," pursuant to which Axle Holding transferred to Kingswood LLC up to $500,000.00 annually (the "Management Fee"). Plaintiff is informed and believes, and on that basis alleges, that the transfer of the Management Fee was directed, approved and facilitated by Defendants, and each of them.

25.     Plaintiff is informed and believes, and on that basis alleges, that the source of the Management Fee was the gross revenues of AutoAnything.

26.     On or about February 26, 2019 AutoAnything made a partial payment on the Short-Term Note in the amount of $32,253.90 and on or about March 1, 2019 AutoAnything made a partial payment on the Short-Term Note of $1,040,000.00, which payments did not satisfy the amount then due and owing under the Short-Term Note.  As a result on or about February 26, 2019, AutoAnything  had defaulted on the Short-Term Note by failing to pay in full the $1,590,000.00 amount owing at that time.

27.     On or about February 26, 2019 AutoAnything defaulted on the Long-Term Note by failing to pay interest then due thereunder.

28.     On or about March 27, 2019, Plaintiff delivered to AutoAnything and Kingswood LLC a Notice of Event of Default and Reservation of Rights, declaring a default under the Short-Term Note. Plaintiff delivered additional notices of default to AutoAnything and Kingswood LLC on April 30, 2019, August 16, 2019, December 22, 2021 and December 13, 2022 (collectively, the "Notices of Default").

True and correct copies of the Notices of Default are attached hereto as **Exhibit C**.

29.     Plaintiff is informed and believes, and on that basis alleges, that between 2019 and 2020, the accounts payable of Axle Holding and AutoAnything increased from approximately $8.4 million to approximately $16 million.

30.     Plaintiff is informed and believes, and on that basis alleges, that between 2019 and 2020, the current liabilities of Axle Holding and AutoAnything increased from approximately $11.2 million to approximately $23.2 million.

31.     Plaintiff is informed and believes, and on that basis alleges, that between 2019 and 2020, the amount by which liabilities on the Axle Holding and AutoAnything balance sheet exceed assets (i.e. the "partners' deficit") increased from approximately $2.4 million to approximately $13.7 million.

32.     Plaintiff is informed and believes, and on that basis alleges, that between July 30, 2020 and December 31, 2020 or thereabout, Defendants, and each of them, directed, approved and facilitated a distribution by Axle Holding to its shareholders of approximately $5,000,000.00 (the "Equity Distribution").

33.     Plaintiff is informed and believes, and on that basis alleges, that the source of the Equity Distribution was the gross revenues of AutoAnything.

34.     Plaintiff is informed and believes, and on that basis alleges, that the Equity Distribution and Management Fee impaired the ability of AutoAnything to conduct its business, including paying its debts as they came due.

35.     On about November 2, 2021, AutoAnything made a General Assignment for the Benefit of Creditors (the "ABC") to AutoAnything (ABC), LLC ("Auto (ABC)"). As of the date of the filing of this complaint Defendant AutoAnything is no longer operating.

36.     On or about November 2, 2021, Auto (ABC) sold substantially all of the assets of AutoAnything to AA-M4 Acquisition Company, LLC in exchange for a $4,500,000.00 note with a maturity date of November 2, 2025, plus certain assumed liabilities.

37.    May 2, 2022 was established as the last day to submit a proof of claim against Auto (ABC).

38.    On or about February 25, 2022, Plaintiff timely filed a claim against Auto (ABC) in the amount of $13,239,509.12 (the "ABC Claim"), inclusive of unpaid principal and accrued interest through that date. Interest continues to accrue on the ABC Claim. No distribution has been made to Plaintiff on account of the ABC Claim.

39.    The maturity date of the Long-Term Note occurred on February 26, 2023, however AutoAnything did not pay any amounts due thereunder.

40.    Plaintiff declared the Notes in default as permitted by the terms of the Notes, and declared all amounts due thereunder immediately due and payable. The Notes were not paid, and have not been paid, as required by their terms.

41.    As of July 18, 2023, the outstanding balance due to Plaintiff under the Notes is $14,365,838.04. Interest continues to accrue on the Notes.

42.    Prior to the filing of this lawsuit, the Governor of the State of California issued Rule 9 of the Emergency Rules (relating to the COVID 19 pandemic) which provides "Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020…."

**FIRST CAUSE OF ACTION**
**(Intentional Fraudulent Transfer –**
**Cal. Civ. Code § 3439.04(a)(1) and Common Law)**
**(Against Defendants Kingswood L.P., Kingswood LLC, Wolf,**
**Niegsch and Sanocki)**

43.    Plaintiff repeats and re-alleges every allegation contained above as if set forth fully herein.

44.    Plaintiff has a right to payment from AutoAnything for not less than $14,365,838.04, plus interest which continues to accrue.

45.    There is such a unity of interest and ownership between AutoAnything

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

and Axle Holding that the separate personalities of the two corporations no longer exist. Axle Holding was formed solely for the purpose of entering into the AutoAnything APA and has no business purpose apart from its ownership of AutoAnything. The financials of AutoAnything and Axle Holding are comingled, substantively consolidated and are essentially identical such that AutoAnything and Axle Holding operate as a single economic unit. Axle Holding is in fact a mere instrumentality or alter ego of AutoAnything.

46. If the acts alleged herein to have been taken by AutoAnything or Axle Holding are treated as those of AutoAnything or Axle Holding alone, an inequitable result would result.

47. Upon information and belief, AutoAnything and Axle Holding transferred the Equity Distribution and the Management Fees to Kingswood LLC and thereafter to Wolf, Kingswood L.P., Niegsch, and Sanocki (collectively, the "Fraudulent Transfer Defendants").

48. Upon information and belief, all of the Defendants directed, controlled and/or otherwise caused Axle Holding and AutoAnything to make the transfers described above.

49. The Fraudulent Transfer Defendants are the first transferees, the immediate transferees or the mediate transferees of the Equity Distribution or the Management Fees.

50. The transfers described above were made with the intent to hinder, delay or defraud creditors of AutoAnything, including Plaintiff.

51. The transfers by Axle Holding and AutoAnything of the Equity Distribution and the Management Fee were made to Fraudulent Transfer Defendants who were "insiders" within the meaning of Civil Code Section 3439.04(b).

52. The transfers by Axle Holding and AutoAnything were made to Fraudulent Transfer Defendants after receiving at least one of the Notices of Default from Plaintiff.

53.    The transfers by Axle Holding and AutoAnything to the Fraudulent Transfer Defendants were made without receiving reasonably equivalent value in exchange for the transfers.

54.    Axle Holding and AutoAnything were insolvent or became insolvent shortly after Axle Holding and AutoAnything transferred the Equity Distribution and the Management Fee.  Between 2019 and 2020, the accounts payable of Axle Holding and AutoAnything increased from approximately $8.4 million to approximately $16 million; the current liabilities of Axle Holding and AutoAnything increased from approximately $11.2 million to approximately $23.2 million and the amount by which liabilities on the Axle Holding and AutoAnything balance sheet exceed assets (the "partners' deficit") increased from approximately $2.4 million to approximately $13.7 million.

55.    As a result of the Equity Distribution and Management Fee, Plaintiff was damaged because AutoAnything was unable to perform its obligations to Plaintiff under the Notes.

56.    At all times mentioned herein, the Fraudulent Transfer Defendants, and each of them, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff. Plaintiff is therefore entitled to exemplary or punitive damages.

57.    Plaintiff is entitled to recover judgment to avoid the transfers described above and to recover from the Fraudulent Transfer Defendants the value of the Equity Distribution and Management Fees transferred to them as of the date of the transfer, and for special damages in an amount to be determined according to proof at trial.

## SECOND CAUSE OF ACTION
### (Conspiracy to Commit Fraudulent Transfer(s))
### (Against All Defendants)

58.    Plaintiff repeats and re-alleges every allegation contained above as if set forth fully herein.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

59.     Defendants, and each of them, had prior knowledge of, and consciously decided to aid, abet, conspire with, and/or participate in, the fraudulent transfers of the Equity Distribution and Management Fee by Axle Holding and AutoAnything. The transfers were made, and Defendants acted, with the intent to hinder, delay, and/or defraud AutoAnything's creditors, including Plaintiff.

60.     At all times mentioned herein, Defendants, and each of them, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff. Plaintiff is therefore entitled to exemplary or punitive damages.

61.     Plaintiff is entitled to recover judgment from Defendants, and each of them, for the value of the Equity Distribution and Management Fees transferred from Axle Holding and AutoAnything as of the dates of the transfers, and for special damages in an amount to be determined according to proof at trial.

### THIRD CAUSE OF ACTION
### (Constructively Fraudulent Transfer –
### Cal. Civ. Code § 3439.04(a)(2) and Common Law)
### (Against Defendants Kingswood L.P., Kingswood LLC, Wolf, Niegsch and Sanocki)

62.     Plaintiff repeats and re-alleges every allegation contained above as if set forth fully herein.

63.     Plaintiff has a right to payment from AutoAnything for not less than $14,365,838.04, plus interest which continues to accrue.

64.     There is such a unity of interest and ownership between AutoAnything and Axle Holding that the separate personalities of the two corporations no longer exist.  Axle Holding was formed solely for the purpose of entering into the AutoAnything APA and has no business purpose apart from its ownership of AutoAnything.  The financials of AutoAnything and Axle Holding are comingled, substantively consolidated and are essentially identical such that Axle Holding and AutoAnything operate as a single economic unit.  Axle Holding is in fact a mere

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

instrumentality or alter ego of AutoAnything.

65.    If the acts alleged herein to have been taken by AutoAnything or Axle Holding are treated as those of AutoAnything or Axle Holding alone, an inequitable result would result.

66.    Upon information and belief, Axle Holding and AutoAnything to transferred the Equity Distribution and the Management Fees to Kingswood LLC and thereafter to Wolf, Kingswood L.P., Niegsch and Sanocki (collectively, the "Fraudulent Transfer Defendants") for less than a reasonably equivalent value.

67.    Axle Holding and AutoAnything were insolvent or became insolvent shortly after the above transfers were made.

68.    At or about the time of the transfers described above, Axle Holding and AutoAnything were engaged or were about to engage in a business or a transaction for which the remaining assets of Axle Holding and AutoAnything would be unreasonably small in relation to the business or transaction.  Between 2019 and 2020, the accounts payable of Axle Holding and AutoAnything increased from approximately $8.4 million to approximately $16 million; the current liabilities of Axle Holding and AutoAnything increased from approximately $11.2 million to approximately $23.2 million and the amount by which liabilities on the Axle Holding and AutoAnything balance sheet exceed assets (the "partners' deficit") increased from approximately $2.4 million to approximately $13.7 million. Defendants, and each of them, caused Axle Holding and AutoAnything to transfer the Equity Distribution and the Management Fee to the Fraudulent Transfer Defendants after receiving at least one of the Notices of Default from Plaintiff.

69.    At or about the time of the transfers described, Axle Holding and AutoAnything intended to incur debts beyond their ability to pay as they became due, or believed or reasonably should have believed that they would incur debts beyond their ability to pay as they became due. Between 2019 and 2020, the accounts payable of Axle Holding and AutoAnything increased from approximately $8.4 million to

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

approximately $16 million; the current liabilities of Axle Holding and AutoAnything increased from approximately $11.2 million to approximately $23.2 million and the amount by which liabilities on the Axle Holding and AutoAnything balance sheet exceed assets (the "partners' deficit") increased from approximately $2.4 million to approximately $13.7 million.  Defendants, and each of them, caused Axle Holding and AutoAnything to transfer the Equity Distribution and the Management Fee to the Fraudulent Transfer Defendants after receiving at least one of the Notices of Default from Plaintiff.

70.    As a result of the Management Fees and the Equity Distribution, Plaintiff was damaged because AutoAnything was unable to perform its obligations to Plaintiff under the Notes.

71.    At all times mentioned herein, the Fraudulent Transfers Defendants, and each of them, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff.  Plaintiff is therefore entitled to exemplary or punitive damages.

72.    Plaintiff is entitled to recover judgment to avoid the transfers described above and to recover from the Fraudulent Transfer Defendants the value of the Equity Distribution and Management Fees transferred to them as the dates of the transfers and for special damages in an amount to be determined according to proof at trial.

**FOURTH CAUSE OF ACTION**
**(Constructively Fraudulent Transfer –**
**Cal. Civ. Code § 3439.05 and Common Law)**
**(Against Defendants Kingswood L.P., Kingswood LLC, Wolf,**
**Niegsch and Sanocki)**

73.    Plaintiff repeats and re-alleges every allegation contained above as if set forth fully herein.

74.    Plaintiff has a right to payment from AutoAnything for not less than $14,365,838.04, plus interest which continues to accrue.

75.    Plaintiff's claim arose before the Defendants, and each of them, caused

Axle Holding and AutoAnything to transfer the Management Fee and the Equity Distribution to Defendants, and each of them, caused Axle Holding and AutoAnything to transfer the Equity Distribution and the Management Fee to Kingswood LLC and thereafter to Kingswood L.P., Wolf, Niegsch and Sanocki (collectively, the "Fraudulent Transfer Defendants").

76. There is such a unity of interest and ownership between AutoAnything and Axle Holding that the separate personalities of the two corporations no longer exist. Axle Holding was formed solely for the purpose of entering into the AutoAnything APA and has no business purpose apart from its ownership of AutoAnything. The financials of AutoAnything and Axle Holding are comingled, substantively consolidated and are essentially identical such that Axle Holding and AutoAnything operate as a single economic unit. Axle Holding is in fact a mere instrumentality or alter ego of AutoAnything.

77. If the acts alleged herein to have been taken by AutoAnything or Axle Holding are treated as those of AutoAnything or Axle Holding alone, an inequitable result would result.

78. Axle Holding and AutoAnything transferred the Management Fees and the Equity Distribution without receiving a reasonably equivalent value in exchange for the transfer.

79. Axle Holding and AutoAnything were insolvent or became insolvent shortly after the transfers described above were made. Between 2019 and 2020, the accounts payable of Axle Holding and AutoAnything increased from approximately $8.4 million to approximately $16 million; the current liabilities of Axle Holding and AutoAnything increased from approximately $11.2 million to approximately $23.2 million and the amount by which liabilities on the Axle Holding and AutoAnything balance sheet exceed assets (the "partners' deficit") increased from approximately $2.4 million to approximately $13.7 million. Defendants, and each of them, caused Axle Holding and AutoAnything to transfer the Equity Distribution and

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

the Management Fees to the Fraudulent Transfer Defendants after receiving at least one of the Notices of Default from Plaintiff.

80.    As a result of the Management Fee and the Equity Distribution, Plaintiff was damaged because AutoAnything was unable to perform its obligations to Plaintiff under the Notes.

81.    At all times mentioned herein, Fraudulent Transfer Defendants, and each of them, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff.  Plaintiff is therefore entitled to exemplary or punitive damages.

82.    Plaintiff is entitled to recover judgment to avoid the transfers described above and to recover from the Fraudulent Transfer Defendants the value of the Equity Distribution and Management Fees transferred to them as the dates of the transfers and for special damages in an amount to be determined according to proof at trial.

### FIFTH CAUSE OF ACTION
### (Unlawful Dividend – 8 Del. Code. §§  170, 173 & 174; or alternatively Cal. Corp. Code. §§ 500, 501, 506)
### (Against Kingswood LLC, Kingswood L.P., Axle Holding, Wolf, Niegsch and Sanocki)

83.    Plaintiff repeats and re-alleges every allegation contained above as if set forth fully herein.

84.    Upon information and belief, at all times relevant herein, Defendants Kingswood LLC, Kingswood L.P., Axle Holding, Wolf, Niegsch and Sanocki (the "Fiduciary Defendants") were directors, and/or officers, and/or shareholders of AutoAnything and had the power to direct and control the decisions of AutoAnything.

85.    Under both Delaware and California law, the Fiduciary Defendants owed fiduciary duties to Plaintiff during the time that AutoAnything was insolvent, or was at risk of becoming insolvent, and they violated those duties.

86.    At all times relevant herein, AutoAnything was insolvent because

(1) the reasonable market value of its assets was less than the stated value of its combined liabilities, and (2) AutoAnything could not meet present and/or future debts as they came due.  For example, between 2019 and 2020, the accounts payable of AutoAnything increased from approximately $8.4 million to approximately $16 million; the current liabilities of AutoAnything increased from approximately $11.2 million to approximately $23.2 million and the amount by which liabilities on the AutoAnything balance sheet exceed assets (the "partners' deficit") increased from approximately $2.4 million to approximately $13.7 million.   Fiduciary Defendants, and each of them, caused AutoAnything to transfer the Equity Distribution after receiving at least one of the Notices of Default from Plaintiff.

87.     Under Section 170 of the Delaware Corporations Code, the directors of AutoAnything could only lawfully declare and pay the Equity Distribution out of a surplus or, if there was no surplus, out of net profits for the fiscal year in which the dividend is declared and/or the preceding year.

88.     Upon information and belief, AutoAnything had no surplus when the Equity Distribution was declared and paid because its total assets did not exceed its total liabilities at that time.

89.     Upon information and belief, AutoAnything also had no net profits in the fiscal year when the Equity Distribution was declared and paid, or in the preceding year.

90.     Upon information and belief, at all times relevant herein, the Equity Distribution rendered AutoAnything insolvent and/or exacerbated its insolvency.

91.     Upon information and belief, at all times relevant herein, the directors of AutoAnything did not rely in good faith on the corporation's records, officers and employees, committees of the board, or experts in determining that AutoAnything had adequate funds to declare and pay the Equity Distribution.

92.     In addition to  being subject to (and violating) Delaware law, AutoAnything was and is subject to the limitations on corporate distributions and

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

related shareholder liability set forth in sections 500, 501 and 506 of the California Corporations Code, because AutoAnything satisfies the requirements of section 2115 of the California Corporations Code.  AutoAnything violated California law.

93.    Under California Corporations Code section 500, AutoAnything was prohibited from authorizing and paying the Equity Distribution. This is because, among other things, upon information and belief, (1) the directors of AutoAnything did not determine in good faith that immediately prior to the Equity Distribution the retained earnings of AutoAnything equaled or exceeded the sum of the amount of the proposed distribution plus the preferential dividends arears amount, and (2) the directors of AutoAnything did not determine in good faith that immediately after the Equity Distribution the value of AutoAnything's assets would equal or exceed the sum of its total liabilities plus the preferential rights amount.  As noted, between 2019 and 2020, the amount by which liabilities on the Axle Holding and AutoAnything balance sheet exceed assets (the "partners' deficit") increased from approximately $2.4 million to approximately $13.7 million.

94.    Under California Corporations Code Section 501, AutoAnything was prohibited from authorizing and paying the Equity Distribution.  This is because, among other things, upon information and belief, AutoAnything was unable to pay its debts as they came due or was rendered unable to pay its debts as they came due as a result of the Equity Distribution.

95.    Under California Corporations Code Section 506, any shareholder who receives an unlawful distribution with knowledge of facts indicating its impropriety is liable to the corporation for the benefit of its creditors for the amount so received, with interest.  Upon information and belief, at all times relevant herein, the Fiduciary Defendants received the Equity Distribution with knowledge of facts indicating the Equity Distribution was improper.

96.    Plaintiff did not consent to the Equity Distribution.

97.    Fiduciary Defendants, and each of them, failed to act with reasonable

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

care (were negligent) and breached their fiduciary duties when authorizing the unlawful Equity Distribution.

98.   As a result of the Fiduciary Defendants' wrongful conduct, AutoAnything was unable to perform its obligations to Plaintiff under the Notes.

99.   At all times mentioned herein, Fiduciary Defendants, and each of them, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff.  Plaintiff is therefore entitled to exemplary or punitive damages.

100.   Plaintiff is entitled to equitable remedies as a result of Fiduciary Defendants' unlawful distribution.   Plaintiff is also entitled to damages against Fiduciary Defendants and each of them for the value of the Equity Distribution.

## SIXTH CAUSE OF ACTION
### (Breach of Duty of Loyalty/Self-Dealing – Delaware or alternatively California) (Against All Defendants)

101.   Plaintiff repeats and re-alleges every allegation contained above as if set forth fully herein.

102.   Upon information and belief, at all times relevant herein, Defendants Kingswood LLC, Kingswood L.P., Wolf, Niegsch and Sanocki (the "Fiduciary Defendants") were directors or officers of AutoAnything and/or Axle Holding and had the power to direct and control the decisions of AutoAnything and Axle Holding.

103.   Under Delaware and/or California corporation law, the Fiduciary Defendants owed fiduciary duties to Plaintiff during the time that AutoAnything and Axle Holding were insolvent or were at risk of becoming insolvent.

104.   At all times relevant herein, Defendants Axle Holding and AutoAnything were insolvent because (1) the reasonable market value of their combined assets was less than the stated value of their combined liabilities and also (2) they could not meet present and/or future debts as they came due. For example, Between 2019 and 2020, the accounts payable of Axle Holding and AutoAnything

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

increased from approximately $8.4 million to approximately $16 million; the current liabilities of Axle Holding and AutoAnything increased from approximately $11.2 million to approximately $23.2 million and the amount by which liabilities on the Axle Holding and AutoAnything balance sheet exceed assets (the "partners' deficit") increased from approximately $2.4 million to approximately $13.7 million. Defendants, and each of them, caused Axle Holding and AutoAnything to transfer the Equity Distribution and the Management Fee after receiving at least one of the Notices of Default from Plaintiff.

105.   Fiduciary Defendants breached their duty of loyalty to Axle Holding and AutoAnything by engaging in self-dealing by authorizing the unlawful Equity Distribution at the expense of creditors such as Plaintiff.

106.   As a result of the Fiduciary Defendants' conduct, AutoAnything was unable to perform its obligations to Plaintiff under the Notes.

107.   At all times mentioned herein, Fiduciary Defendants, and each of them, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff. Plaintiff is therefore entitled to exemplary or punitive damages.

108.   Plaintiff is entitled to equitable remedies as a result of Fiduciary Defendants' breach of the duty of loyalty. Plaintiff is also entitled to damages against Fiduciary Defendants and each of them for the value of the Equity Distribution and for the unpaid amounts due under the Notes alleged above.

## SEVENTH CAUSE OF ACTION
### (Intentional Interference with Contract/Prospective Economic Advantage)
### (Against Defendants Kingswood L.P., Kingswood LLC, Wolf, Niegsch and Sanocki)

109.   Plaintiff repeats and re-alleges every allegation contained above as if set forth fully herein.

110.   The Notes were valid contracts between Plaintiff and AutoAnything carried a probable future economic benefit to Plaintiff.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

111.   Defendants Kingswood L.P., Kingswood LLC, Wolf, Niegsch and Sanocki (collectively, "<u>Interference Defendants</u>"), and each of them, had knowledge of the Notes and knew that Plaintiff had an economic relationship with AutoAnything that carried a probable future economic benefit to Plaintiff.   Interference Defendants knew that AutoAnything needed sufficient funds in order to pay the Notes (and to continue to operate its business and pay creditors).

112.   Interference Defendants, and each of them, by authorizing the Management Fees and the Equity Distribution, at a time when AutoAnything's liabilities were substantially above its assets, and increasing, engaged in intentional acts designed to induce a breach or disruption of the contractual relationship between Plaintiff and AutoAnything, resulting in the actual breach of the Notes.

113.   At all times mentioned herein, Interference Defendants, and each of them, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff. Plaintiff is therefore entitled to exemplary or punitive damages.

114.   Plaintiff is entitled to compensation from Interference Defendants for all the detriment proximately caused by Defendants' tortious conduct.

## EIGHTH CAUSE OF ACTION
### (Negligent Interference with Contract/Prospective Economic Advantage)
### (Against Kingswood L.P., Kingswood LLC, Wolf, Niegsch, and Sanocki)

115.   Plaintiff repeats and re-alleges every allegation contained above as if set forth fully herein.

116.   The Notes were valid contracts between Plaintiff and AutoAnything, and carried a probable future economic benefit to Plaintiff.

117.   Defendants Kingswood L.P., Kingswood LLC, Wolf, Niegsch and Sanocki (collectively, "<u>Interference Defendants</u>"), and each of them, had knowledge of the Notes and knew that Plaintiff had an economic relationship with AutoAnything that carried a probable future economic benefit to Plaintiff.

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

118.   Interference Defendants, and each of them, failed to act with reasonable care and engaged in wrongful conduct by distributing the Management Fee and the Equity Distribution.

119.   As a result of the Defendants' conduct, AutoAnything was unable to perform its obligations to Plaintiff under the Notes.

120.   Plaintiff is entitled to compensation from Defendants for all the detriment proximately caused by Defendants' tortious conduct.

**NINTH CAUSE OF ACTION**

**(Breach of Contract)**

**(Against AutoAnything)**

121.   Plaintiff repeats and re-alleges every allegation contained above as if set forth fully herein.

122.   The Notes were valid contracts between Plaintiff and AutoAnything.

123.   Plaintiff did all or substantially all of the significant things that the Notes required it to do.

124.   AutoAnything failed to perform under the Notes, namely by failing to pay the full amount of the Short-Term Note upon maturity, failing to make annual interest payments as they came due under the Long-Term Note, and failing to pay the Long-Term Note upon its maturity.

125.   Plaintiff made demand upon AutoAnything for payment of the past-due amounts under the Notes, but AutoAnything failed and refused to perform its obligations under the Notes.

126.   As a direct and proximate result of AutoAnything's breach of the Notes, Plaintiff has been damaged in the amount of no less than $14,365,838.04 by AutoAnything's failure to pay the amounts due under the Notes.

///

///

///

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court grant the following relief:

### AS TO THE FIRST, THIRD AND FOURTH CAUSES OF ACTION:

1. For judgment against the Fraudulent Transfer Defendants named herein avoiding the Equity Distribution and the Management Fees and directing the Fraudulent Transfer Defendants to return to Plaintiff the amount of the avoidable transfers, in an amount to be established according to proof at trial;

2. For an award of special damages; and

3. For an award of exemplary and punitive damages.

### AS TO THE SECOND CAUSE OF ACTION:

1. For judgment against all Defendants named herein, in the amount of the avoidable transfers, in an amount to be established according to proof at trial; and

2. For an award of special damages; and

3. For an award of exemplary and punitive damages.

### AS TO THE FIFTH CAUSE OF ACTION:

1. For judgment against the Fiduciary Defendants named herein, for damages in an amount to be established at trial, but not less than the amount of the Equity Distribution;

2. For an award of special damages; and

3. For an award of exemplary and punitive damages.

### AS TO THE SIXTH CAUSE OF ACTION:

1. For judgment against the Fiduciary Defendants named herein, for damages in an amount to be established at trial, but not less than the Equity Distribution and the Management Fee;

2. For an award of special damages; and

3. For an award of exemplary and punitive damages.

## AS TO THE SEVENTH CAUSE OF ACTION:

1. For judgment against the Interference Defendants named herein, for damages in an amount to be established at trial, but not less than $14,365,838.04; and

2. For an award of exemplary and punitive damages.

## AS TO THE EIGHTH CAUSE OF ACTION:

1. For judgment against the Interference Defendants named herein, for damages in an amount to be established at trial, but not less than $14,365,838.04.

## AS TO THE NINTH CAUSE OF ACTION:

1. For judgment against AutoAnything for damages in an amount to be established at trial, but not less than $14,365,838.04.

## AS TO ALL CAUSES OF ACTION:

1. For costs of suit herein incurred;

2. For an award of costs and pre-judgment interest to the extent permitted by law; and

3. For such other and further relief as the court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff requests a jury trial on all issues so triable.

DATED:  July 28, 2023                 BUCHALTER, A Professional Corporation


By:    */s/ Valerie Bantner Peo*
          VALERIE BANTNER PEO
          Attorneys for Plaintiff AUTOZONE, INC.

**COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 77671286v2

1

# **INDEX OF EXHIBITS**

2

3

| Short-Term Note | Exhibit A |
|---|---|
| Long-Term Note | Exhibit B |
| Notices of Default | Exhibit C |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

24

**COMPLAINT**

BN 77671286v2